FILED
United States Court of Appeals
Tenth Circuit

April 13, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

SMS FINANCIAL JDC, LP, a Delaware
limited partnership,

     Plaintiff Counter Defendant -
     Appellee,

v.

CARY COPE; P.J.N. CORPORATION,
(possibly doing business as INSURANCE
SPECIALTY and/or INSURANCE
SPECIALTY P.I.E.), an Oklahoma
Corporation; PAMELA J. NEIBAUER;
CHEROKEE YACHT CLUB, an
Oklahoma corporation; ROBERT
FERGUSON,

     Defendants Counterclaimants -
     Appellants.

No. 16-6063
(D.C. No. 5:15-CV-00505-C)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **HARTZ**, Circuit Judges.
_____

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This case concerns competing claims to a yacht moored in Oklahoma. Cary Cope and the other defendants appeal the district court's grant of summary judgment to SMS Financial JDC, LP ("SMS"). Exercising jurisdiction under 28 U.S.C. § 1291,[1] we reverse in part and affirm in part.

# I

In February 2001, Cope filed a voluntary petition for Chapter 7 bankruptcy. He listed the Bank of Union of El Reno ("Union") as an unsecured, non-priority creditor, citing his "Personal Guarantee on George Gorman Pipeline." Cope received a Chapter 7 discharge in August 2002.

In 2004, Cope purchased a yacht with financing from Union. According to Cope, Union compelled him through an unwritten agreement to sign a note reviving his discharged, pre-petition guarantee on the Gorman Pipeline project. Union entered into two separate promissory notes: (1) #86991, for approximately $125,000, which Cope claims was for the yacht; and (2) #86993, for approximately $76,000, which Cope associates with the discharged Gorman Pipeline debt.

Cope did not sign either note; instead, Mainstream Mortgage ("Mainstream") was the obligor on both. Cope had no ownership interest in Mainstream, which was

---

[1] Although the district court did not expressly dispose of defendants' counterclaim, we conclude that the judgment appealed from in this case is final and appealable. Cf. Orient Mineral Co. v. Bank of China, 506 F.3d 980, 989-90 (10th Cir. 2007) (noting that parties needed Fed. R. Civ. P. 54(b) certification to maintain appeal because counterclaim remained pending in district court). The court implicitly dismissed the counterclaim by rejecting defendants' arguments and entering summary judgment for SMS.

owned by his friend Darren Shockey. Initially, Cope's only direct responsibility for the yacht transaction appears to have been a personal guarantee he gave for note #86991 (the yacht note). Less than six months later, Cope assumed direct responsibility for both notes #86991 and #86993. On October 19, 2004, Cope executed and delivered promissory note #87480 for $133,277.09, payable to Union. The funds from this note were used to pay off note #86991 (the yacht loan). As collateral for this note, Cope pledged the yacht. On the same date, Cope also executed and delivered promissory note #87479 in favor of Union. Union disbursed the proceeds of that note, totaling $76,004.16, to pay off note #86993.

In February 2007, Cope executed and delivered a new promissory note, #91135, for $219,247.92 in favor of Union. The proceeds of this note were disbursed as follows: $137,857.17 to pay off note #87480; $81,290.75 to pay off note #87479; and $100 as a loan origination fee.[2] Cope again pledged the yacht to secure the note, but Union never perfected a security interest by filing it with the Coast Guard as required by law. Cope defaulted on note #91135 in January 2010.

After ceasing payments on note #91135, Cope re-titled the yacht in the name of P.J.N. Corporation ("PJN"). Cope served as President of PJN. His wife, Pamela

---

[2] The Disbursement Request and Authorization for this loan shows that the $81,290.75 payment was applied to "loan #874780." But it does not appear that such a loan number exists. In district court, SMS indicated that the $81,290.75 payment was applied to note #87479. Cope then argued that Union might have deliberately inserted the non-existent loan number to cover up note #87479's origins. We do not need to resolve this issue because any dispute about the origin of the error in the Disbursement Request does not represent a genuine issue of material fact.

Neibauer, was its sole shareholder. PJN was dissolved in 2009 or 2010. As part of the dissolution, PJN sold or distributed the yacht to Neibauer, who then leased it to defendant Robert Ferguson.

The Federal Deposit Insurance Corporation ("FDIC") subsequently placed Union into receivership. On February 28, 2014, the FDIC sold note #91135, along with other Union assets, to SMS. None of the records that SMS acquired from the FDIC contain evidence of an agreement, written or otherwise, to include debt that Cope owed prior to his bankruptcy petition in a post-bankruptcy note.

SMS sought a judgment against Cope for the amount due under note #91135, plus interest, and an order awarding and delivering the yacht to SMS. Defendants counterclaimed, seeking a declaratory judgment that note #91135 was paid, void, unenforceable, or extinguished, and that SMS' security interest in the yacht was void and unenforceable. The district court granted SMS' motion for summary judgment.

**II**

Our standard of review is well established:

> We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We may affirm on any basis supported by the record, even though not relied on by the district court.

McCarty v. Gilchrist, 646 F.3d 1281, 1284-85 (10th Cir. 2011) (quotations omitted). Because jurisdiction in this case is based on diversity of citizenship, we

4

apply the substantive law of the forum state, Oklahoma.  Hayes Family Tr. v. State

Farm Fire & Cas. Co., 845 F.3d 997, 1005 (10th Cir. 2017).[3]

## A

Defendants argue that SMS lacks standing to sue on note #91135 because the

note was not properly assigned to SMS.  SMS provided the district court with a copy

of the note, together with a facially valid allonge assigning it to SMS.  But

defendants contend that the allonge and other documents completing the assignment

are invalid because, by the time an SMS representative signed them, the power of

attorney ("POA") that empowered the SMS representative to act for the FDIC had

expired.

Under Oklahoma law, a promissory note is a negotiable instrument that may be

enforced only by someone with standing; that is, someone who is a party to the note

or someone in privity thereto.  Wells Fargo Bank, N.A. v. Heath, 280 P.3d 328, 334

(Okla. 2012).  One establishes standing by presenting a copy of a facially enforceable

note.  Deutsche Bank Nat'l Tr. Co. v. Roesler, 348 P.3d 707, 712 (Okla. Civ. App.

---

[3] Defendants contend that this case is founded on "federal question" jurisdiction because the issues and claims involved the application of 12 U.S.C. § 1823(e) and SMS' status as a holder in due course from the FDIC.  But these issues arose as part of SMS' attempt to counter various defenses, not as part of SMS' "well-pleaded complaint," and thus do not give rise to federal question jurisdiction. See Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc., 693 F.3d 1195, 1202 (10th Cir. 2012) ("Under the well-pleaded complaint rule, a suit arises under federal law only when the plaintiff's statement of his own cause of action shows that it is based on federal law." (quotations omitted)).

2015).  SMS satisfied this requirement by presenting to the district court the note and a facially valid allonge assigning the note to itself.

Issues about the continuing validity of the underlying POA at the time of assignment, and its effect on the validity of the allonge and other documents, are relevant only to the merits of SMS' action.  See id. ("[A]ttaching a copy of a facially enforceable note to a petition establishes a prima facie case for standing.  All further questions regarding the final legal right of a plaintiff or claimant to foreclose on the note remain merits questions.").[4]  In district court, defendants did not contest the validity of the documents assigning the note and security agreement to SMS.  Nor did they argue that the allonge and other assignment documents were invalid due to an expired POA.  Thus, defendants forfeited this issue.  See Entek GRB, LLC v. Stull Ranches, LLC, 840 F.3d 1239, 1243 (10th Cir. 2016).

**B**

Defendants next argue that note #91135 is unenforceable because it revived Cope's discharged, pre-bankruptcy guarantee on the Gorman Pipeline project in violation of 11 U.S.C. § 524(c).  The district court rejected this argument because the record does not link the note to Cope's discharged debt.  It further reasoned that

---

[4] Although we are not required to follow the reasoning of an intermediate state court, "we should do so unless we are convinced that reasoning is incorrect."  Home Loan Inv. Co. v. St. Paul Mercury Ins. Co., 827 F.3d 1256, 1263 (10th Cir. 2016).  We are persuaded by the Oklahoma Court of Civil Appeals' reasoning concerning the sufficiency of documentation to establish standing under state law, as well as the distinction between standing and merits issues in foreclosure actions.

6

defendants' allegations were barred by <u>D'Oench, Duhme & Co. v. FDIC</u>, 315 U.S. 447 (1942), and its codification at 12 U.S.C. § 1823(e).

We conclude that there is a genuine dispute of material fact as to whether note #91135 violated § 524(c) and thus the district court erred in granting summary judgment to SMS. Section 524 provides a debtor with broad protections from attempts to collect a dischargeable debt. A creditor seeking to reaffirm such a debt by entering into an agreement with the debtor, "the consideration for which, in whole <u>or in part</u>, is based on a [dischargeable] debt," must do so prior to discharge and comply with stringent disclosure and approval requirements. § 524(c), (d) (emphasis added). Union did not satisfy these requirements. Giving defendants, who were the non-movants on summary judgment, the benefit of all reasonable inferences, <u>see</u> <u>Asarco, LLC v. Noranda Mining, Inc.</u>, 844 F.3d 1201, 1207 (10th Cir. 2017), the facts in this case could permit a reasonable jury to infer that at least a portion of the consideration for note #91135 was based on Cope's discharged Gorman Pipeline debt. Cope testified that a Union representative told him that he would have to repay the Gorman Pipeline guarantee if he wanted the yacht loan. Although the original promissory notes showed Mainstream as obligor, the two notes were signed the same day, and it is uncontested that one of them, #86991, provided the purchase money for the yacht. According to Cope, the amount of the other note, #86993, approximated the amount left unpaid on the Gorman Pipeline guarantee. Cope eventually took responsibility for both notes, which were restructured with him as obligor, as notes #87479 and #87480. And note #91135 was used to repay notes #87479 and #87480,

7

and thus a portion of the consideration for note #91135 could be viewed as traceable to Cope's agreement to repay the discharged Gorman Pipeline guarantee.

The district court also based its grant of summary judgment to SMS on the D'Oench doctrine, codified at 12 U.S.C. § 1823(e). Section 1823(e) provides that a borrower cannot assert an agreement with a failed bank against attempts by the FDIC or its assignees to collect on a promissory note, unless the agreement is in writing, was executed contemporaneously by the bank and the obligor, was approved by the bank's board of directors, and was made an official record of the bank. A principal purpose of § 1823(e) "is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets. . . . Neither the FDIC nor state banking authorities would be able to make reliable evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." Langley v. FDIC, 484 U.S. 86, 91-92 (1987).

In Langley, the Supreme Court distinguished, for § 1823(e) purposes, between agreements procured by fraud in the factum and those procured by fraud in the inducement. 484 U.S. at 93-94. The former are "entirely void . . . thus leaving no right, title or interest" in the FDIC "that could be diminished or defeated." Id. (quotation omitted). The latter are merely voidable. Id. at 94. Section 1823(e) protects voidable agreements because otherwise the FDIC would be subject "to a wide range of other undisclosed defenses that make a contract voidable, such as certain kinds of mistakes and innocent but material misrepresentations." Id. Thus, even an agreement procured by fraud that is not void is still shielded by § 1823(e)

8

and may be enforced by the FDIC and its successors-in-interest, see id. at 94, but an agreement that is void may not be enforced, id. at 93-94.

We must therefore determine whether an unlawful reaffirmation agreement, represented by a promissory note based in part on a discharged debt, is a "void" agreement or merely a "voidable" one. We conclude such agreements are best considered "void" for several reasons. Reaffirmation agreements entered into without compliance with the requirements of § 524(c) have generally been described as "void and unenforceable," rather than merely voidable. E.g., Republic Bank of Cal., N.A. v. Getzoff (In re Getzoff), 180 B.R. 572, 574 (9th Cir. BAP 1995). Further, a key distinction between a void and a voidable obligation is whether it is subject to ratification by the debtor. See Restatement (Second) of Contracts § 163, cmt. c ("[T]he recipient of a misrepresentation may be held to have ratified the contract if it is voidable but not if it is 'void.'"). An improperly reaffirmed debt is not subject to ratification. In re Lee, 356 B.R. 177, 182-83 (Bankr. N.D. W. Va. 2006). Moreover, discharge in bankruptcy is itself a defense, classed with fraud in the factum, that can defeat even the rights of a holder in due course. See U.C.C. § 3-305(2)(c), (d) (Am. Law Inst. & Nat'l Conf. Comm'rs Uniform State Laws 2014). Finally, as previously noted, § 524(c) prohibits reaffirmation of agreements that rely even in part on consideration based on a discharged debt. For this reason, most courts have held that giving new consideration (like a yacht loan) to persuade a debtor to reaffirm will not validate a non-complying agreement. As one court has explained,

9

> Section 524(c) is not concerned with the consideration that the debtor received; instead, it invalidates non-complying agreements where any part of the consideration <u>given by the debtor</u> involves his promise to pay a discharged debt. . . . Every reaffirmation agreement involves some element of new consideration. Otherwise, the debtor would not agree to pay the discharged debt. If new consideration saved a non-complying reaffirmation agreement, little would remain of the protection afforded by § 524(c).

<u>In re Zarro</u>, 268 B.R. 715, 720-21 (Bankr. S.D.N.Y. 2001).

We have not determined that note #91135 is void, only that a genuine issue of material fact remains concerning whether it is void. If § 524(c) renders the promissory note void, then that "would take the instrument out of § 1823(e)." *Langley*, 484 U.S. at 93. Therefore we reverse summary judgment on this issue.

### C

Finally, defendants argue that the district court should not have given priority to SMS' security interest in the yacht because Union never perfected this security interest by filing it with the Coast Guard. <u>See</u> 46 U.S.C. § 31321(a)(1); <u>Bank of the W. v. Sailing Yacht Serendipity</u>, 101 F. Supp. 3d 238, 248 (E.D.N.Y. 2015). It is undisputed that SMS' interest was not properly recorded. But even so, the interest is valid against "a person having actual notice of the sale, conveyance, mortgage, assignment, or related instrument." § 31321(a)(1).

PJN had actual notice because Cope was its president and his knowledge was imputed to PJN. We also agree with the district court that Neibauer had implied actual notice. Authority from other courts on this point is persuasive. <u>See, e.g.</u>, <u>Mullane v. Chambers</u>, 349 F. Supp. 2d 190, 194-97 (D. Mass. 2004) (discussing and applying standard), <u>aff'd</u>, 438 F.3d 132 (1st Cir. 2006). As noted in <u>Mullane</u>,

10

> If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed.

Id. at 194-95 (quoting The Tompkins, 13 F.2d 552, 554 (2d Cir. 1926)). The facts in this case would lead a fair and prudent person to inquire about the yacht's status. Neibauer knew she had bought the yacht, it was titled in her name, and she leased it to Ferguson. Thus, both PJN and Neibauer had actual or implied actual notice of SMS' superior lien.

## IV

We **REVERSE** the district court's grant of summary judgment to SMS enforcing note #91135 and remand for further proceedings. To the extent that the underlying obligation represented by note #91135 is enforceable, we **AFFIRM** the district court's summary judgment determination that SMS' putative security interest is also enforceable against defendants with actual notice.

Entered for the Court

Carlos F. Lucero
Circuit Judge

11